## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6542 | **DATE** | August 13, 2002 |
| **CASE TITLE** | | *Arres v. Remcor* | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Remcor's Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's Motion for Summary Judgment as to all three counts of the Complaint [21-1] is GRANTED. This is a final judgment and the clerk of the court is directed to enter a Rule 58 judgment and terminate this case from the court's docket.

(11) ■ [For further detail see order attached to the original minute order]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

number of notices

AUG 1 5 2002
date docketed

SB.
docketing deputy initials

date mailed notice

**Document Number**

30

RTS

courtroom deputy's initials

U.S. DISTRICT COURT

Date/time received in central Clerk's Office

mailing deputy initials

**DOCKETED**

AUG 1 5 2002

| | |
|---|---|
| JANICE ARRES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| IMI CORNELIUS REMCOR, INC., | ) |
| | ) |
| Defendant. | ) |

The Hon. Blanche M. Manning

Case No. 00 C 6542

## MEMORANDUM AND ORDER

Plaintiff Janice Arres brought this action against her former employer, IMI Cornelius

Remcor, Inc. ("Remcor"), alleging that Remcor terminated her based on her race/national origin

in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Arres also

alleges two counts of retaliatory discharge based on her efforts to follow federal immigration

employment laws and because she refused to terminate an African-American employee. Remcor

moved for summary judgment pursuant to Fed. R. Civ. P. 56 on all three counts of the

Complaint. For the reasons set forth below, Remcor's motion for summary judgment is granted.

### I.     BACKGROUND

#### A.     Arres's Employment Background

In February 1996, Remcor's Corporate Director of Human Resources, Bob Lundell, and

Glendale Heights General Manager, Ed Wajda, hired Arres as a Human Resources Administrator

for Remcor's Glendale Heights facility. Arres signed a letter acknowledging that her position

was subject to any terms and conditions of an at-will employee. Throughout the duration of her employment, Arres was the only Hispanic female employed by Remcor at a professional level.

As Human Resources Administrator, Arres was responsible for reviewing all employment processing and company compliance with the rules and laws regarding the termination of employees. Arres's job duties included: interviewing prospective employees; conducting new hire orientation; administering employee insurance enrollments and cancellations; generating monthly reports; terminating employees; preparing affirmative action plans; and processing employee reviews. Arres's insurance processing duties included submitting employment information to Remcor's insurance benefit administrator.

During 1996, Wadja was Arres's direct supervisor. In 1997, Wadja was replaced by Mike Long, Vice President of Operations. In 1998, Dan Weinick was hired as the Glendale Heights's Director of Human Resources, thereby becoming Arres's immediate supervisor.

### B.    Arres's Job Performance Appraisals

In January 1999, Weinick prepared Arres's written performance appraisal. Weinick rated her below average in four areas out of twenty-two. These areas included: (1) ability to seldom make errors/redo work; (2) ability to promote cooperation; (3) ability to work and interface with other managers; and (4) availability to answer questions/solve problems, and encourage feedback. The written performance appraisal called for immediate attention to the accuracy of the information Arres provided to Remcor's insurance benefit administrator and noted that Arres committed errors in insurance reporting. Weinick and Arres discussed the evaluation and Arres understood that the two areas in which she needed to improve were the quality of her work and

2

promoting teamwork. Weinick specifically told Arres that she needed to provide better customer service to Remcor's employees.

On May 28, 1999, Weinick conducted a follow-up job performance appraisal by discussing various issues with Arres. Weinick memorialized this discussion in a memorandum to Arres that highlighted the areas in which Arres needed improvement. Once again, Weinick discussed Arres's need to improve the accuracy of the information she provided to the insurance benefit administrator. Also, Weinick discussed Arres's need to improve her teamwork abilities and customer service. The memorandum concluded that because Arres did not show improvement in these areas, she would not receive a pay increase. Last, Weinick stressed that Arres's job performance "must improve immediately."

## C. Inaccurate Social Security Numbers and INS requirements

In March 1999, the Social Security Administration sent a letter to Remcor stating that more than ten percent of the Forms W-2 filed for Remcor employees for tax year 1998 showed names or social security numbers that did not agree with the Social Security Administration records. After conducting an investigation, Arres concluded that some employees' social security numbers were false after she discovered that the numbers on the social security cards and the Immigration and Naturalization Service ("INS") cards were invalid because they were not issued by the appropriate agencies, and thus were in violation of federal immigration laws.

After contacting Weinick and Long about her findings, Weinick told Arres that he would take over the situation. Weinick decided to send letters to the relevant employees in an attempt to correct the situation before terminating the employees because they did not provide the

3

appropriate documentation for employment eligibility verification as required by the Immigration Reform and Control Act, 8 U.S.C. § 1324. Arres disagreed with the way the company handled the situation. Arres believed what Weinick was doing was unlawful and she refused to take part in it.

### D. Arres's Refusal to Terminate an African-American Employee

A few weeks prior to Arres's termination, Weinick informed Arres that he wanted her to terminate the company receptionist, Tanya Fubuluje. Fubuluje, who is African-American, was hired as an agency-provided temporary receptionist. At that time, Remcor was seeking to hire a permanent receptionist who was bilingual in English and Spanish, which Fubuluje was not. Arres told Weinick that she believed firing Fubuluje would be discriminatory. As such, Arres refused to terminate Fubuluje per Weinick's request. Fubuluje was eventually terminated.

### E. Arres's Termination

During August 1999, Weinick recommended Arres's termination to both Lundell and Long. Lundell agreed with the recommendation and Long gave the final approval to terminate Arres because of poor performance. On August 30, 1999, Weinick wrote a memorandum entitled "Note to File, Janice Arres Documentation of Job Performance." This memorandum in support of Arres's termination explained that Arres was being terminated for "unsatisfactory quality and timeliness of work completed, and unsatisfactory service displayed to her internal and external customers." On August 31, 1999, Weinick and Lundell met with Arres to discuss her termination. According to Arres, Lundell informed her that she was being terminated for

insurance reasons. Arres understood this to refer to Remcor employees not getting their medical cards and that their insurance claims were not being processed.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Carrett*, 477 U.S. 317, 322-23 (1986). The court must evaluate the admissible evidence supporting the motion in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). The party opposing the summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading"; rather, it must respond with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B.  Count I – Unlawful Race/National Origin Discrimination

Title VII prohibits an employer from terminating an individual based on the individual's race or national origin. 42 U.S.C. § 2000e-2(a)(1). To prevail on a race/national origin discrimination claim, a plaintiff may present either direct evidence of discriminatory intent or indirect evidence, under the now familiar *McDonnell Douglas* burden shifting method. *McDonnell Douglas v. Green,* 411 U.S. 792, 802-03 (1973); *Simmons v. Chicago Bd. of Educ.,* 289 F.3d 488, 492 (7th Cir. 2002). Under the *McDonnell Douglas* framework, the plaintiff must present evidence tending to show: (1) she was a member of a protected class; (2) she was

5

meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees not in the protected class were treated more favorably. *Simmons*, 289 F.3d at 492. Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a nondiscriminatory explanation for the employment decision. *Id.* Then, the burden returns to the plaintiff to present evidence that the reasons offered by the defendant are pretext for race/national origin discrimination. *Id.*

Arres does not provide any direct evidence of discrimination, therefore, she must prove discriminatory intent by using the *McDonnell Douglas* burden shifting method. It is undisputed that Arres is a member of a protected class (she is Hispanic) and that her termination is an adverse employment action. Therefore, in order to establish discriminatory intent, Arres must show that she was meeting her employer's legitimate job expectations and that similarly situated employees were treated more favorably than she was. *See Simmons*, 289 F.3d at 492.

Arres contends that she was meeting Remcor's job expectations based on her January 1999 job review. However, Arres's job appraisal rated her below average on four areas including her ability to seldom make errors/redo work; her ability to promote cooperation; her ability to work and interface with other managers; and her availability to answer questions/solve problems, and encourage feedback. The written evaluation explained that Arres was to give immediate attention to the accuracy of the information provided during insurance reporting. Weinick told Arres she needed to improve the quality of her work, teamwork, and customer service to Remcor's employees.

More importantly, Arres's most recent job appraisal, the May 1999 follow-up, further substantiates these job performance flaws. In this review, Weinick discussed the areas in which Arres needed improvement including the accuracy of the information she provided to the insurance benefits administrator and that she needed to work on teamwork and customer service. The review concluded that because Arres had not improved in these areas as highlighted in her January 1999 review, she would not receive a pay increase. Last, Arres was told that her job performance "must improve immediately."

Notwithstanding these performance reviews and Weinick's feedback, Arres claims that in the months proceeding her termination on August 31, 1999, no one told her that her performance needed improvement. In light of the substantial evidence of Arres's review process and feedback given to Arres regarding her shortcomings, her unsubstantiated statement that no one told her that her job performance needed improvement is simply not credible.

Arres also relies on a few isolated comments made by Weinick and Long as supervisors, and a co-worker, in support of her contention that she was meeting Remcor's legitimate job expectations. First, her supervisors' comments that Arres "usually met her deadlines" and that she was "responsive and professional" do not refute her performance reviews that specifically addressed her job skills and the improvements needed. Second, Arres's assertion that one of her co-workers had positive feedback about her performance is irrelevant. A co-workers's general statements about a plaintiff's job performance are insufficient to create a genuine issue of material fact as to the plaintiff's performance – at issue is whether the plaintiff was meeting her employer's legitimate expectations at the time she was terminated, not her co-worker's

expectations. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002). Therefore, Arres has not established that she was meeting Remcor's legitimate job expectations at the time she was terminated.

Having failed to establish the second element of her prima facie case, this court need not address Arres's arguments concerning the remaining element, nor whether Remcor's stated reasons for Arres's termination were a pretext for a discriminatory motive. *See Celotex Corp.*, 477 U.S. at 323 ("a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial"); *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1011 (7th Cir. 2000) (if plaintiff fails to make a prima facie case of discrimination, the court does not need to address pretext).

## C.  Count II – Retaliatory Discharge Claim Based on Title VII

In Count II of the Complaint, Arres alleges that Remcor terminated her in retaliation because she refused to fire an African-American receptionist. A plaintiff alleging retaliation may present either direct evidence of discriminatory intent or indirect evidence under the *McDonnell Douglas* burden shifting method. *Kestering v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001). Under the *McDonnell Douglas* method, a plaintiff establishes a prima facie case of retaliation by demonstrating that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Id.* Once the plaintiff establishes a prima facie case, the defendant must offer a legitimate, nondiscriminatory reason for the adverse employment

action. *Id.* Then, the plaintiff must rebut the reason by showing that the adverse action was motivated by a discriminatory purpose. *Id.*

Remcor asserts that Arres has not shown a causal link between her termination and her refusal to fire the African-American receptionist. Remcor argues that it terminated Arres because of her poor job performance and not in retaliation for any specific actions.

Arres, on the other hand, argues that the proximity in time between Arres's refusal to terminate the temporary receptionist and Arres's termination was only a few weeks. It is well-established that a temporal relationship, without more, is insufficient to show a causal relationship supporting a retaliatory discharge claim. *See Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (listing cases). Therefore, Arres's proximity argument does not prove a causal link, that is, it does not show that "but for" her refusal to fire the African-American receptionist, Remcor would not have terminated her. *See Basith v. Cook County*, 241 F.3d 919, 933 (7th Cir. 2001).

Because Arres's only argument is that of the temporal proximity between her termination date and the date she was asked to terminate the receptionist, Arres has failed to set forth a prima facie case of retaliatory discharge. Therefore, Remcor is entitled to summary judgment on Count II of the Complaint.

### D.    Count III – Retaliatory Discharge as Against Public Policy

Arres's last count in her Complaint is a pendant state law tort claim of retaliatory discharge. In Count III, Arres alleges that her termination was in retaliation for her efforts to uphold the federal immigration laws regarding employment of illegal aliens in violation of

9

Illinois public policy based on the Immigration Reform and Control Act. *See* 8 U.S.C. §§ 1324a, 1324b.

Illinois follows the common-law doctrine that an employer may generally discharge an at -will employee for any reason. *Barr v. Kelso-Burnett Co.*, 106 Ill.2d 520, 525 (1985); *see also Long v. Commercial Carriers, Inc.*, 57 F.3d 592, 594 (7th Cir. 1995). Retaliatory discharge, however, is the exception to this rule. *See Barr,* 106 Ill.2d at 525. Under Illinois law, a plaintiff must allege three elements to state a retaliatory discharge claim: (1) the plaintiff was discharged; (2) the discharge was in retaliation for her activities; and (3) the discharge violates a clear mandate of Illinois public policy. *Graham v. Commonwealth Edison Co.*, 318 Ill.App.3d 736, 742 (1st Dist. 2000). The first two elements of retaliatory discharge under Illinois law are not disputed. At issue is whether being discharged in retaliation for refusing to go along with an employer's alleged violation of the Immigration Reform and Control Act can be a basis for a clear mandate of Illinois public policy.

Remcor relies on the unpublished Northern District of Illinois order *Rai v. Dynagear, Inc*, No. 98 C 6053, 1999 U.S. Dist. LEXIS 16262 (N.D. Ill. Oct. 1, 1999) for the proposition that Arres's state retaliatory discharge claim based on the public policy underlying the Immigration Reform and Control Act is not cognizable under Illinois law. In *Rai,* the plaintiff argued that because there was a strong federal policy against retaliation for filing a complaint with the INS, there was a clear mandate of public policy against retaliation on this basis in Illinois as well. *Id.* at *9. The court concluded, however, that the anti-retaliation provision of the Immigration Reform and Control Act preempts any state law claim based on retaliation for filing a complaint

10

with the INS. *Id.* In other words, victims of retaliatory discharge for filing complaints with the INS have a remedy under federal law, therefore, they cannot bring a retaliatory discharge claim based on Illinois public policy as well. *See id.*; *see also* 8 U.S.C. § 1324b(a)(5).

This court agrees with the *Rai* court's analysis. Indeed, other courts in this federal district have concluded that retaliatory discharge based on public policy is not actionable in Illinois courts when a cause of action is available under federal or state laws to enforce the public policy allegedly contravened. *See, e.g., Guiterrez v. City of Chicago,* 605 F. Supp. 973, 980 (N.D. Ill. 1985) (federal discrimination laws provide causes of action for wrongful discharged based on racial discrimination and political activity); *Brudnicki v. General Elec. Co.,* 535 F. Supp. 84, 88-89 (N.D. Ill. 1982) (both federal and Illinois law specifically provide for a remedy if employee discharged in retaliation for his opposition to unlawful employment practices). Because § 1324b(a)(5), of the Immigration Reform and Control Act, Prohibition of Intimidation or Retaliation, unequivocally sets forth a remedy for individuals who have filed a charge or complaint with the INS and then were consequently retaliated against, *see Robinson Fruit Ranch, Inc. v. United States,* 147 F.3d 798, 801 (9th Cir. 1998), a claim for retaliatory discharge in Illinois is not actionable.

Because Arres's retaliatory discharge claim based on Illinois public policy is not actionable, Count III of the Complaint is dismissed.

## III.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [21-1] is granted with respect to all three counts of Arres's Complaint. This is a final judgment and the clerk of the court is directed to enter a Rule 58 judgment and terminate this case from the court's docket.


ENTER:

_Blanche M. Manning_

**Blanche M. Manning**
**U.S. District Court Judge**


DATE:___AUG 1 3 2002___